# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAO HEALTH, a California Corporation,<br><br>        Plaintiff,<br>vs.<br><br>SHENZHEN LUTEJIANCHENG TECHNOLOGY CO., LTD., a/k/a SHENZHEN ROOT E-COMMERCE CO., LTD., a China Limited Company,<br><br>        Defendant. | Case No. 1:23-cv-04885<br><br>**JURY TRIAL DEMANDED** |

**DAO HEALTH'S MOTION TO COMPEL DEFENDANT
SHENZHEN LUTEJIANCHENG TECHNOLOGY CO., LTD. TO PRODUCE VARIOUS
DOCUMENTS AND EMAIL AND COMPUTER CHAT CORRESPONDENCE, FOR
ADDITIONAL EMAIL CUSTODIANS, AND TO PROVIDE COMPLETE ANSWERS
TO INTERROGATORIES AND REQUESTS FOR ADMISSION**

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

In the nine months since fact discovery opened, Defendant Shenzhen Lutejiancheng Technology Co., Ltd. ("Momcozy") Momcozy has provided evasive discovery responses, disregarded demands to supplement, ignored multiple requests to meet and confer, and suppressed the production of clearly discoverable evidence. In light of Momcozy's refusal to cooperate, under Rule 26 and 33-37, Plaintiff Dao Health ("Dao") moves to compel the production of: evidence in the possession of Momcozy's affiliates; evidence regarding reasonably similar infringing devices; evidence generated after filing of the complaint; evidence regarding Momcozy's online advertising; complete answers to ROGs 1-6, 9-10, 15-18, 21, 23, and RFAs 9, 11-18, 20-21, 23, 26-31, 35-37, 39-58, 60-64, 66-74, and 76-79; and email and computer chat correspondence.

## I. Background

Dao initiated this action against Momcozy for infringing three U.S. patents related to wearable hands-free breast milk collection devices. Dkt. 1. The original complaint targeted six Momcozy-branded breast pump devices publicly known at the time. *Id.* Since filing, however, Dao has identified thirteen additional (and new) infringing devices made by Momcozy, prompting two requests to amend its complaint. *See* Dkts. 47, 58, 70. The most recent amendment involves devices branded as Paruu and PiBur, which Momcozy acknowledges are made, used, sold, offered for sale, or imported by its affiliates, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. (the "Paruu Affiliate") and ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. (the "PiBur Affiliate"). Ex. 7 at 16. Despite these admissions, Momcozy now attempts to evade discovery by claiming no involvement with these devices, *id.* at 15—an assertion unsupported by both facts and law. This is indicative of Momcozy's broader discovery tactics in which it has refused to provide key documents and information, disregarded discovery correspondence, refused to compromise, and even outright ignored numerous requests to meet and confer. *See* Dkt. 73 at 1-4.

For example, on October 7, Dao emailed Momcozy outlining many remaining deficiencies

1

in its amended ROG responses and requested a meet and confer. Ex. 10 at 4. Momcozy did not respond. *Id.* On October 14—seven days later—Dao followed up and referred to the Court's September 18 Order stating "requests to meet and confer must be responded to within three business days." (Dkt. 86). Two days later, which was nine days after the original request, Momcozy's counsel responded. *Id.* at 3. Dao's counsel also sent other discovery emails regarding issues raised in this motion, but Momcozy *never* replied. *See* Ex. 11; Ex. 12, Ex. 13. When the parties finally met and conferred on the issues, Dao's counsel spent over an hour walking through its numerous discovery emails, asking Momcozy's counsel—issue by issue—whether Momcozy would reconsider its positions. Each time, Momcozy flatly refused, often without explanation. Laiche Decl. ¶ 43. Given Momcozy's persistent refusal to engage in the discovery process, Dao is left with no choice but to file this motion.

**II.     Momcozy Has Not Produced Available Evidence in the Possession of its Affiliates.**

Discovery exposed that China-based Momcozy is part of a complex network of shell corporations, all under the control and direction of the same individuals. Momcozy has actively tried to obscure this network and block key discovery by hiding behind the pretense of "corporate separateness," and its full structure is still unknown to Dao. *See infra*, Part VI. Indeed, Momcozy lodged blanket objections to **all discovery requests** and refused to produce any documents or information held by its affiliates—even those affiliates that Momcozy admits design, manufacture, market, sell and/or import the accused devices, and which the evidence shows are under Momcozy's control. *See, e.g.,* Ex. 7 at 10; Ex. 8 at 2, 14-15; Ex. 14 at 8. This is plainly improper. *EEOC v. Heart of CarDon, LLC*, 339 F.R.D. 602, 606 (S.D. Ind. 2021) ("Defendant may not hide behind its corporate structure to avoid facilitating proper discovery").

Under the Federal Rules, a party must provide materials within its "control"—i.e. that it has the legal right, authority, or practical ability to obtain. *See Dexia Local Credit v. Rogan*, 231

2

F.R.D. 538, 542 (N.D. Ill. 2004).[1] With corporate affiliates, this Court looks to: (1) commonality of ownership; (2) intermingling of officers/employees; (3) exchange of documents; (4) financial relationship; (5) the corporate party's marketing/servicing of the non-party products; (6) the non-party's connection to the issues; and (7) the benefit/involvement of the non-party in the case. *Ledesma v. Marriot*, 2023 WL 2814762, *3 (N.D. Il. Apr. 6, 2023). Each factor favors Dao.

Discovery revealed that Momcozy is part of a complex network of corporations, each under common ownership and sharing officers and employees. For example:



[2] *See* Exs. 16, 17.

---

[1] *See also EEOC v. Heart of CarDon, LLC*, 339 F.R.D. 602, 606 (S.D. Ind. 2021) (Rule 34); *Brunswick Corp. v. Suzuki Co.*, 96 F.R.D. 684, 686 (E.D. Wis. 1983) (Rule 33); *Henry v. Champlain Enter.*, 212 F.R.D. 73, 78 (N.D.N.Y. 2003) (Rule 36); *Ethypharm France v. Abbott Lab'ys*, 271 F.R.D. 82, 96 (D. Del. 2010) (Rule 30).

[2] ▮▮▮. Ex. 16 at 2.

██████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

████████████████████ Ex. 18. ████████

████████████████████████

████████████████████████████████████

███████████████████████████████. *Id.*

███████████████████████████████████. *See* Ex. 7 at 12.

██████████████████████████████

███████████████████████. *See e.g.,* Ex. 19. ████████

█████████████████████████. *See id.*, Ex. 20 ████████

████████████████████; Exs. 21, 28 (same); Ex. 36 ████████

███████████████████████, Ex. 6 at 44; ████████

██████████████████████████████

██████████████████████████████

█████████████████████. *See* Ex. 22.

As to marketing/servicing non-party products, ████████████████

██████████████████████████████

██████████████████████████████:

4



Ex. 23.

." Ex. 24. Further, the Paruu warranty website has been redirecting U.S. customers to Momcozy's warranty website. Ex. 25 at 6. This shows that the warranty and customer service functions are unified, allowing Momcozy to service these identical products. *See id.*

Accordingly, the Court should overrule Momcozy's blanket, boilerplate objection and hold that Momcozy must respond to all discovery requests with relevant documents and information in possession of its corporate affiliates involved (directly or indirectly) in designing, manufacturing, marketing, selling, and/or importing the accused wearable breast pump devices (including Momcozy, Paruu, and Pibur devices), and also compel Momcozy to fully respond to ROG 16 and RFAs 11, 14-15, 17, 20-23, 35, 37, 40-47, and 58, prepare a knowledgeable witness for deposition, and produce all responsive documents held by such affiliates.

### III. Momcozy Refuses to Produce Evidence Regarding Devices "Reasonably Similar" to the Nineteen Devices Accused in this Case.

Dao has repeatedly requested discovery regarding Momcozy's wearable breast pumps "reasonably similar" to those accused in this case. *See* Ex. 1 at 2, 6 (ROG2); Ex. 2 at 6-7 (ROGS 15, 20); Ex. 3 (RFPs 16, 18, 21-24, 26-35, 41-46); Ex. 4 at 4 (83-84). Momcozy has categorically refused to comply. For example, ROG 2 asked Momcozy to identify each "Accused Device"—defined to include devices "reasonably similar" to those identified in the complaint—that Momcozy has made, used, sold, offered for sale, or imported. Ex. 1 at 2, 6. But Momcozy identified

5

only devices Dao *already accused* in reliance on the following objection:

> Defendant objects to Plaintiff's definition of the term "Accused Devices" to the extent it encompasses devices, systems, products, goods, and methods "reasonably similar" to the Momcozy models identified in the Complaint that are not relevant to any claim or defense in this action or are not within the scope of fact discovery in this action. Ex. 6 at 2; *see also id.* at 11.

Similarly, ROG 20 asked Momcozy to identify "wearable breast pumps" other than those accused that Momcozy or its affiliates have made, used, sold, offered for sale, or imported. Ex. Ex. 2 at 7. Momcozy did not answer. Ex. 7 at 20. Notably, Momcozy has incorporated its blanket objection to "reasonably similar" devices across its general objections in each of its discovery responses.

Momcozy's objection is baseless. Dao is entitled to full discovery on all wearable breast pumps "reasonably similar" to those already accused in this case. *See LKQ Corp. v. Kia Motors Inc.*, 2023 WL 3455315, at *4 (N.D. Ill. May 15, 2023). Moreover, this discovery is essential given Momcozy's pattern of withholding information on its wearable pumps that it knows are likely infringing. For example, just two weeks after Dao filed its initial Complaint, Momcozy launched its infringing V1 and V2 models, which Dao only discovered through public sources, requiring it to amend the complaint. *See* Dkt. 47. Then, *six months* into fact discovery, Dao uncovered that Momcozy was preparing to launch the M6 and M9 models, again through public sources, leading to another amendment and a one-month delay. *See* Dkt. 58. Shortly after, Momcozy disclosed that affiliated entities were selling additional infringing pumps under the Paruu and PiBur brands, resulting in yet another amendment and a three-month delay to the case. *See* Dkt. 86. Most recently, just last month after Dao filed its Third Amended Complaint, Dao discovered yet additional likely infringing wearable pumps, ▮. Laiche Decl. ¶ 44. Yet, Momcozy has refused to produce related documents or to identify these or other potentially infringing devices in response to ROGs.

This discovery is essential to Dao's preparation of its infringement case. Momcozy's

practice of continually launching new infringing devices presents significant ongoing infringement, which continues to irreparably harm Dao. As a result, Dao notified Momcozy that it will seek leave to amend to add claims for a permanent injunction against the accused devices and similar products. Discovery into these reasonably similar devices is necessary to enforce an injunction.[3] Accordingly, Dao respectfully asks the Court to overrule Momcozy's blanket objection and compel it to supplement its discovery responses to identify all reasonably similar infringing devices, including to ROGs 2 and 20 and RFPs 83-84.

### IV. Momcozy's Refusal to Produce Evidence Created After the Complaint is Improper.

Momcozy's responses to each of Dao's requests are improperly limited in time period based on an objection to producing materials "created after the filing of the … complaint." *See, e.g.*, Ex. 6 at 6; Ex. 8 at 6; Ex. 9 at 7. In meet-and-confer discussions, Momcozy's counsel could not clearly explain this objection (because it is baseless) and instead repeatedly directed Dao to an August 30 email stating Momcozy "withdraw[s] its objection with respect to non-email documents generated between the filing of the original Complaint and the Second Amended Complaint." Ex. 26 at 3. Thus, Momcozy is not withdrawing its objection entirely—including as to its written responses—and implicitly acknowledges the relevance of post-complaint discovery.

Momcozy's objection is unfounded. "Under Rule 26 ... there is no bar against discovery of information about events occurring after the filing of a complaint." *McKinney v. Gannett Co.*, 660 F. Supp. 984, 990 (D.N.M. 1981).[4] Moreover, Momcozy's ongoing launch and sale of infringing devices during this litigation necessitates discovery of post-complaint documents; otherwise, Momcozy's ongoing and willful infringement would be shielded from discovery. *See Raytheon*

---

[3] *See TiVo v. EchoStar*, 646 F.3d 869, 881-82 (Fed. Cir. 2011) ("[T]he party seeking to enforce the injunction must prove both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes.").
[4] *See also Novelty, Inc. v. Mountain View,* 2010 WL 11561280, at *4 (S.D. Ind. Jan. 29, 2010).

*Co. v. Cray, Inc.*, 2017 WL 1362700, at *5 (E.D. Tex. Mar. 13, 2017) (holding post-complaint intent qualifies for the willfulness scienter requirement). Therefore, Dao respectfully asks the Court to overrule Momcozy's objection and compel discovery of relevant documents, communications, and information created after the Third Amended Complaint.

**V.  Momcozy has Refused to Produce Discovery Regarding its Online Advertising.**

Dao's ROG 21 and RFPs 76-81 seek relevant discovery regarding Momcozy's online advertising keywords. Ex. 2 at 7; Ex. 4 at 3-4. Despite their relevance, Momcozy refuses to respond.

The requested discovery is relevant to several key issues in this case. Keywords purchased by Momcozy related to Dao's Freemie® product suggest pre-suit knowledge of Dao's products and patents, supporting claims of willful infringement. Momcozy's search terms may also show its recognition of the commercial success and value of Dao's patented product—critical to secondary considerations of non-obviousness. Additionally, such discovery is relevant to lost profits damages, particularly if Momcozy's advertising efforts attempt to divert customers away from Dao. Furthermore, keyword groups that include Momcozy's affiliates (Paruu, PiBur) would expose the relationship between these entities and Momcozy's role in their marketing and sales.[5]

**VI.  Momcozy Provided Incomplete Responses to ROGs 1, 4-6, 9, 10, 15-19, 21, and 23.**

*Momcozy has concealed discovery of willful infringement in its response to ROG 1*, which asks Momcozy to identify when it first became aware of the patents-in-suit—including the persons who learned of each patent, the circumstances under which they became aware, and any actions they took in response. Ex. 1 at 6.

---

[5] During the meet-and-confer process, Momcozy did not raise objections regarding scope, burden, or overbreadth. Nevertheless, Dao will narrow the requests to specific keywords or phrases related to: breast pump products, breast pump market participants, Dao Health, Freemie®, the patents-in-suit, Paruu, PiBur, and the Accused Devices.



████ Ex. 6 at 8-9. █

*Id.* at 10. But Momcozy refused to produce any other information on its first awareness of Dao's patents or details about this ███ document such as its custodian, when the document was sent, who at Momcozy received or reviewed it, and what actions Momcozy took in response. This factual information is highly relevant to willfulness. *See Schwab-Vollhaber v. Carson Design Inc.*, 2022 WL 610967, *2 (D. Minn. 2022). And Momcozy cannot refuse to provide it based on a blanket objection to privilege.[6] The Court should thus order a complete response to ROG 1.

***Momcozy's responses to ROGs 4-6 obfuscate essential damages information.*** ROGs 4-6 respectively ask Momcozy to identify for each Accused Device: its revenues from sales; the total units made, used, sold, or imported; and the amount of costs, profits, and/or taxes paid or refunded from sales. Ex. 1 at 6-7. Aside from an incomplete table listing only the per-unit sales for just 8 of the 19 Accused Products (42%), Momcozy copied and pasted its response for each of these three ROGs by citing the exact same 62 documents. Ex. 6 at 22-30. This is improper for several reasons.

First, Momcozy cannot rely on Rule 33(d), as the burden of ascertaining the requested information is not substantially the same for both parties. Of the 62 documents cited, 59 (i.e., 95%)

---

[6] *See Oracle v. Google*, 2011 WL 3502481, at *1 (N.D. Cal. Aug. 10, 2011); *Baxter v. BectonCo.*, 2019 WL 3408813, at *4 (N.D. Ill. July 26, 2019) ("[T]he circumstances surrounding an accused infringer's discovery of a patent are not in themselves protected by the attorney-client privilege. This is true even if an accused infringer first becomes aware of a patent through its attorney.").

contain untranslated Chinese, creating a significant obstacle for Dao. *See Softketeers v. Regal W.*, 2019 WL 9047106, at *2 (C.D. Cal. Dec. 5, 2019) ("Reliance upon business records in a foreign language without a translation 'runs afoul of Rule 33(d).'"). Additionally, Momcozy cited the same 62 documents in response to each separate ROG, forcing Dao to sift through 62 documents just to determine which are responsive. For example, ROG 6 requests information on costs, profits, and taxes related to the accused devices, yet numerous documents solely address sales volumes. *See, e.g.*, Ex. 27. Momcozy is in the best position to identify the documents that contain the requested financial information, and "[i]t is not sufficient for [it] to simply direct [Dao] to a mass of business records." *Graske v. Auto-Owners Ins.*, 647 F.Supp.2d 1105, 1108 (D. Neb. 2009); *Franco-Gonzalez v. Holder*, 2013 WL 8116823, at *10 (C.D. Cal. May 3, 2013) (noting that Rule 33(d) requires the responding party to explain what information will be found and where).

Second, the documents cited by Momcozy fail to provide complete information for Dao to calculate damages. Specifically, even in the aggregate they do not include revenues, sales, and costs data through the present time, nor do they cover all nineteen devices accused in this case. Additionally, the documents do not specify whether sales occurred in the U.S. or abroad, do not identify relevant individuals with knowledge of the financial information, and even fail to clarify whether the financial data is recorded in U.S. Dollars or Chinese Yuan. *See, e.g.*, Ex. 29.

Third, the 62 documents contain inconsistent financial figures. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Such discrepancies prevent Dao from ascertaining the requested information and will only lead to unnecessary disputes over damages calculations at trial. Thus, the Court should compel Momcozy to amend its responses to ROGs 4-6 to provide accurate and complete information.

*Momcozy's response to **ROG 9** improperly withholds the identities of relevant witnesses.*

ROG 9 requests that Momcozy identify three individuals most knowledgeable on certain topics for the Accused Devices. *See* Ex. 1 at 7-8. In response, Momcozy identified only *two* individuals and only for *Momcozy-branded pumps*, covering just 10 of the 19 Accused Devices at issue. Ex. 6 at 40. This discovery is clearly relevant and identifying knowledgeable witnesses is not an undue burden on Momcozy—especially given Paruu and PiBur are essentially not separate entities. *See supra.*

***Momcozy conceals its corporate structure and operations in its answer to ROGs 10, 17, and 18.*** ROG 10 asks Momcozy to identify its current affiliates and the names and titles of its CEO and Board, but Momcozy fails to provide this information for each affiliate. Ex. 6 at 22-27. ROG 17 seeks information about Momcozy's organizational structure and the role of its affiliates, but Momcozy provides a vague list of affiliates, describing some as "Related Entit(ies)" or "Associated Entit(ies)" without defining these terms or clarifying the corporate relationships. Ex. 7 at 11-12. The response further appears incomplete and/or inaccurate as it does not accurately describe the work of each affiliate.[7] Momcozy's response also does not identify numerous entities that, according to Momcozy's documents, are affiliated. *See* Exs. 16-17, 30. ROG 18 asks which affiliates are involved in making the accused Paruu and PiBur products, but Momcozy's response is insufficient. I███████████████████████████████████████████████████████████████████████████████. Ex. 7 at 15. Additionally, it fails to clarify the relationship between Momcozy and its affiliates or identify the time periods during which each affiliate was involved in manufacturing, using, selling, or importing the devices. *Id.*

Discovery related to these interrogatories is pivotal. The precise extent of Momcozy's vast and overlapping corporate structure remains unknown, and Dao has no visibility into those persons

---

[7] *Compare* Ex. 7 at 11 ███████████████████████████████████████████), *with id.* at 16 ███████████████████████████████████████).

11

that are the ultimate beneficial owners of Momcozy and its affiliates. This discovery is therefore crucial for Dao to refute Momcozy's attempts to withhold relevant information held by its affiliates and to counter its claims of non-infringement by Paruu and PiBur devices.

**Momcozy's ignores half of <u>ROG 19</u>**, which asks about Momcozy's design-around efforts and persons having knowledge relevant to this inquiry. Ex. 2 at 7. Although Momcozy asserts that it has made no design-around efforts, it fails to identify any individuals with knowledge of its response. Ex. 7 at 18. During the meet and confer, Momcozy argued that no such identification can be provided because it responded in the negative; however, even if no design-around efforts were made, individuals within Momcozy must possess knowledge of that fact.

**Momcozy's responses to <u>ROGs 15 and 16</u> are evasive and incomplete.** First, ROGs 15 and 16 ask details about when Momcozy first had the idea to design, manufacture, and/or sell wearable breast milk collection devices. Ex. 2 at 6. But Momcozy improperly alters the scope of these ROGs by answering only as to Momcozy branded devices — not "wearable breast pump devices" and all "Accused Products" respectively. Ex. 7 at 4-8. Second, Momcozy only provides the "project initiation date" for each device—not when Momcozy "first had the idea" for the device, which would have preceded any "project initiation." *Id.* Third, Momcozy does not provide the "identity and role of the Person(s) who came up with the idea" for each device. *Id.* Fourth, Momcozy fails to provide the "identity and role of the Persons(s) who were in charge of designing and/or developing the device." *Id.* In most instances, Momcozy only lists "███████████" without identifying the members of the "Team" or providing a description of any person(s)' roles in the design and development, manufacture, and/or sale of the devices. *Id.* Lastly, regarding the conception, design, development, or manufacture of each wearable breast pump device, Momcozy identifies zero documents for ROG 15 and only two documents for ROG 16—but R044622 (Ex. 29) contains sales information that is inapplicable here, and R044623 (Ex. 31) contains cost information only for the

12

Momcozy devices—not Paruu and PiBur. *Id.* Both documents also contain untranslated Chinese, which improperly shifts the burden of ascertaining the information to Dao. *See Softketeers, Inc.*, 2019 WL 9047106, at *2.

**Momcozy makes no effort to respond to ROG 23**. ROG 23 asks Momcozy to identify its advertisements, press releases, and other marketing materials concerning its breast milk collection devices. Momcozy identified only three documents in response, which are clearly insufficient to account for all materials for all nineteen Accused Devices. Ex. 7 at 26. Worse, these three documents were produced by *Dao*—not Momcozy. This deficiency is particularly glaring given that, in response to RFP 39, Momcozy has agreed to produce its marketing materials concerning the Accused Devices.

**VII.  Momcozy's Non-Responses to Dao's RFAs Violate Rule 36.**

Momcozy responds to **55 of 84 (65%)** RFA's by offering boilerplate objections and stating:

> Subject to and without waiving the foregoing specific and general objections, Defendant lacks sufficient information to admit or deny this Request in view of the foregoing objections to and the ambiguities in this Request, and therefore denies this Request.

*See generally* Ex. 9. This response is improper for several reasons. First, Rule 36 requires "an answering party to either answer the RFA or object, *not both*." *LKQ Corp.*, 2023 WL 2429010 at *2. Second, to the extent Momcozy does not respond with an unqualified admission or denial, under Rule 36(a)(4) Momcozy must "state in detail why [it] cannot truthfully admit or deny." *Diamond Servs. Mgmt. v. C&C Jewelry Mfg.*, 2021 WL 4258800, at *5 (N.D. Ill. May 11, 2021). But Momcozy provides no specific explanation beyond its rote objections. This is particularly problematic because Momcozy's lack of specificity prevents Dao from discerning which objections underlie Momcozy's denials. For example, Momcozy objects to RFAs 40-46 and 48-57 as improperly seeking claim construction positions (which is incorrect as the requests use non-technical terms), but then repeats its generic qualified denial, leaving Dao unable to determine whether this

13

objection or other objections—such as those to privilege or relevance—animate Momcozy's nonresponses. Third, Momcozy also claims that it "lacks sufficient information to admit or deny," but does not state, as it must under FRCP 36(a)(4), that "it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fourth, there is no ambiguity in the requests, and Momcozy cannot rely on rote assertions of vagueness to refuse to answer 65% of Dao's requests.

Further, Momcozy provided no basis for its refusal to respond to **RFAs 32-33**. Ex. 9 at 33-34. These RFAs do not seek privileged information—they seek factual information and a party is entitled to discover at least "(1) the existence of a litigation hold memo, if any; (2) the date it was issued; and (3) the recipients of such memo." *Ericsson Inc. et al., v. TCL Communication Tech. Holdings, Ltd.*, et al., No. 2:15-cv-11-RSP (E.D. Tex. Nov. 18, 2015). Also, Momcozy's responses to **RFAs 60-65** are insufficient because Momcozy denies each request even though they are framed in the alternative and present mutually exclusive possibilities. Ex. 9 at 63-68. The facts must support one alternative or the other, and denial of both is improper. *See* FRCP 36(a)(4).

### VIII. Dao is Entitled to Additional Email Custodians and Computer Chat Messages Because Momcozy's Email Production is Deficient.

The E-Discovery Order states that parties may obtain "electronic correspondence" via specific production requests for up to five custodians and nine search terms per custodian. Dkt. 56 ¶¶ 6-7. The Court may consider requests for additional custodians "upon showing a distinct need based on the size, complexity, and issues of this specific case." *Id.* ¶¶ 6-7. When Dao selected its five Momcozy custodians, Momcozy had been suppressing critical information on employee roles, the Paruu and PiBur Affiliates, and Momcozy's corporate structure. *See* Dkt. 37. Dao had to select custodians with limited information as the prior discovery deadline approached, but it expressly reserved the right to seek additional custodians from the Court. *See* Ex. 32. Now that Momcozy's

14

email productions are ostensibly complete, it is clear that severe deficiencies exist.

Momcozy has produced only 2,603 email documents in response to all 45 of Dao's search terms. Laiche Decl. ¶ 45. In contrast, Dao has produced 8,565 email documents for just 19 search terms—which is 5,962 (2x) more emails for 26 fewer terms. *Id.* This disparity will widen as Dao has agreed to produce up to 3,000 more emails per term for each of Momcozy's remaining 26 terms (yet unserved). *Id.* Deficiencies at the current custodian-level also expose the imbalance: Momcozy has produced a mere 509 emails for custodian Chen Wanyuan, 108 for Zeng Liqiang, and none for Li Jing. *Id.* This limited production fails to provide Dao with reasonable discovery, including because Dao was unable to select custodians Momcozy identified for the Paruu- and PiBur- branded products.

Related to Momcozy's deficient production, Dao recently became aware that .[8] But Momcozy has refused to produce any messages from the ▇▇▇ accounts of its employees, including from the accounts of Momcozy's email custodians hitting on Dao's search terms.

Given the deficiencies in Momcozy's email productions, the size and complexity of this patent case involving 19 accused devices, and easy availability of this discovery to Momcozy from a technical standpoint, Dao respectfully requests the Court grant it leave to serve production requests for five (5) additional custodians and compel Momcozy to produce ▇▇▇ messages from Momcozy's custodians' business accounts hitting on Dao's search terms.

## IX. CONCLUSION

For these reasons, Dao asks the Court to compel Momcozy to supplement its discovery.

---

[8] *See, e.g.*, Ex. 33 at 2 ("▇▇▇"); Ex. 28 at 14 ("▇▇▇").

|  |  |
|---|---|
| Dated: November 25, 2024 | Respectfully submitted,<br><br>By: */s/ Tanner Laiche*<br>Meng Xi<br>   Texas State Bar No. 24132850<br>   mxi@susmangodfrey.com<br>Shawn Blackburn<br>   Texas State Bar No. 24089989<br>   sblackburn@susmangodfrey.com<br>**SUSMAN GODFREY LLP**<br>1000 Louisiana Street, Suite 5100<br>Houston, TX 77002<br>Telephone: (713) 651-9366<br>Facsimile: (713) 654-6666<br><br>Tanner Laiche<br>   Washington State Bar No. 60450<br>   tlaiche@susmangodfrey.com<br>**SUSMAN GODFREY LLP**<br>401 Union Street, Suite 3000<br>Seattle, WA 98101<br>Telephone: (206) 505-3816<br>Facsimile: (206) 516-3883<br><br>Howard B. Rockman<br>   Illinois ARDC No. 2361051<br>   rockman@rvoiplaw.com<br>**ROCKMAN, VIDEBECK & O'CONNOR, LLC**<br>   1s376 Summit Ave., Court C<br>   Oakbrook Terrace, Illinois 60181<br>   Telephone: (630) 627-4552<br>   Facsimile: (630) 627-2145<br><br>Yanling Jiang<br>   Illinois ARDC No. 6309336<br>   yanling@jiangip.com<br>Yi Bu<br>   Illinois ARDC No.<br>**JIANGIP LLC**<br>   33 West Jackson Blvd.<br>   Chicago, Illinois 60604<br>   Telephone: (630) 733-9483<br><br>***Attorneys for Plaintiff Dao Health*** |

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies pursuant to Local Rule 37.2 and the Court's Case Procedures, the parties met and conferred on November 1, 2024 at 12:30 pm CT via Zoom and the relief sought in this motion is opposed. Meng Xi, Sam Drezdzon, and Tanner Laiche participated on behalf of Dao Health. James Sanner, Wallace Feng, and Nicole Kopinski participated for Momcozy. Counsel for Dao Health attended the meet and confer in good faith and spent over an hour walking through Momcozy's discovery deficiencies in hopes to compromise on the subject of this motion. Counsel for Momcozy was unwilling to reconsider its discovery positions.

*/s/ Tanner Laiche*
Tanner Laiche

## CERTIFICATE OF SERVICE

I certify that, on November 25, 2024, the foregoing document was filed electronically in compliance with Local Rule 5.9(a), and will also be served via email on all counsel of record.

*/s/ Tanner Laiche*
Tanner Laiche

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that Plaintiff's Dao Health's Motion to Compel is authorized to be filed under seal pursuant to Judge Durkin's case procedures.

*/s/ Tanner Laiche*
Tanner Laiche