**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

DAO HEALTH,

               Plaintiff,

       v.

SHENZHEN LUTEJIACHENG
TECHNOLOGY CO., LTD.

               Defendant.

Civil Action No. 1:23-cv-04885

Judge Thomas M. Durkin

Magistrate Judge Beth W. Jantz

**JURY TRIAL DEMANDED**


**DEFENDANT SHENZHEN LUTEJIACHENG TECHNOLOGY CO., LTD.'S**
**OPENING CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. BACKGROUND OF THE TECHNOLOGY AT ISSUE.....................................................1

    A. The Prior Art ......................................................................................................1

    B. The Dao Patents-in-Suit ....................................................................................3

III. APPLICABLE LEGAL STANDARDS .........................................................................6

    A. Claim Construction ............................................................................................6

    B. Indefiniteness ....................................................................................................7

IV. CONSTRUCTION OF THE DISPUTED CLAIM TERMS ...............................................8

    A. U.S. PATENT NO. 7,559,915 ........................................................................8

        1. "external suction source" (claims 1, 2, 6, 7, 15, 16, 18, 33) .......................8

        2. "a reduced volume within said reservoir . . . said reduced volume formed within said drip tube" (claim 16) ........................................................... 13

    B. U.S. PATENT NO. 8,118,772 ......................................................................15

        1. "a valve assembly" (claims 1, 2, 4, 5, 8, 11, 14, 26, 34)........................... 15

        2. "a valve assembly disposed between and surrounded by the adaptor and the reservoir" (claims 1, 2, 4, 5, 8, 11, 14, 26, 34)................................... 17

        3. "external suction source" (claims 4, 5, 8) ................................................ 19

    C. U.S. PATENT NO. 8,702,646 ......................................................................20

        1. "a distal end of said drip tube having an aperture adjacent the distal end" (claims 1, 2, 3) ...................................................................................... 20

        2. "cyclical application and relief of said vacuum pressure adapted to encourage the expression of breast milk from said breast" and "said cycle portion relieving said vacuum pressure adapted to allow the capture and collection of said breast milk in said reservoir" (claims 1, 2, 3) .............. 22

        3. "through said interior chamber" (claim 3) ............................................... 24

V. CONCLUSION............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Application of Swinehart*,
439 F.2d 210 (CCPA 1971)...............................................................23

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) ...........................................................12

*Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*,
677 F.3d 1361 (Fed. Cir. 2012) ...........................................................6

*Chimie v. PPG Indus., Inc.*,
402 F.3d 1371 (Fed. Cir. 2005) ...........................................................7

*Cisco Sys. Inc. v. Ramot at Tel Aviv Univ. Ltd.*,
No. CV 21-1365-GBW, 2024 WL 4751590 (D. Del. Nov. 12, 2024).....................................23

*Cloud Farm Assocs. LP v. Volkswagen Grp. of Am., Inc.*,
674 F. App'x 1000 (Fed. Cir. 2017) ...................................................19

*Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*,
No. CV 13-2012-SLR, 2015 WL 7295436 (D. Del. Nov. 18, 2015).......................................24

*CUPP Cybersecurity, LLC v. Trend Micro, Inc.*,
No. 3:18-CV-1251-M, 2021 WL 5865383 (N.D. Tex. Dec. 10, 2021) ...................................12

*David Netzer Consulting Eng'r LLC v. Shell Oil Co.*,
824 F.3d 989 (Fed. Cir. 2016) ...........................................................7

*Ex parte Lyell*,
17 U.S.P.Q.2d 1548 (B.P.A.I. 1990) ...................................................24

*Fenner Invs., Ltd. v. Cellco P'ship*,
778 F.3d 1320 (Fed. Cir. 2015) ...........................................................7

*Halliburton Energy Servs., Inc. v. M-I LLC*,
514 F.3d 1244 (Fed. Cir. 2008) ...............................................23, 24, 25

*Harris Corp. v. IXYS Corp.*,
114 F.3d 1149 (Fed. Cir. 1997) ...........................................................21

*In re Katz Interactive Call Processing Pat. Litig.*,
639 F.3d 1303 (Fed. Cir. 2011) ...........................................................19

*IP Innovation LLC v. Mitsubishi Elec. Corp.*,
No. 08 C 393, 2009 WL 3617505 (N.D. Ill. Oct. 29, 2009).....................................20

i

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005) ........................................................... 24

*Lecat's Ventriloscope v. MT Tool & Mfg.*,
    351 F. Supp. 3d 1100 (N.D. Ill. 2018) ................................................ 24

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) .............................................................................. 8

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) .............................................................................. 8

*Noah Sys., Inc. v. Intuit Inc.*,
    675 F.3d 1302 (Fed. Cir. 2012) ............................................................. 8

*Omega Eng'g., Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ............................................................. 7

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
    778 F.3d 1021 (Fed. Cir. 2015) ........................................................ 6, 7

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ........................................................ 6, 7

*Poly-America, L.P. v. API Indus., Inc.*,
    839 F.3d 1131 (Fed. Cir. 2016) ............................................................. 7

*SightSound Techs., LLC v. Apple Inc.*,
    809 F.3d 1307 (Fed. Cir. 2015) ........................................................... 19

*Tech. Props. Ltd. LLC v. Huawei Techs. Co.*,
    849 F.3d 1349 (Fed. Cir. 2017) ........................................................... 11

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335 (Fed. Cir. 2015) ............................................................. 8

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009) ........................................................... 11

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ............................................................... 6

*ZMI Corp. v. Cardiac Resuscitator Corp.*,
    844 F.2d 1576 (Fed. Cir. 1988) ............................................................. 7

**Statutes**

35 U.S.C. § 112 ........................................................................................................... 19, 24

35 U.S.C. § 112(a) ........................................................................................................... 6

Defendant Shenzhen Lutejiancheng Technology Co., Ltd. ("Momcozy") submits its opening claim construction brief regarding U.S. Patent No. 7,559,915 ("the '915 patent," JA JA0001–20)[1]; U.S. Patent No. 8,118,772 ("the '772 patent," JA0021–56); and U.S. Patent No. 8,702,646 ("the '646 patent," JA0057–64) (collectively, the "Patents-in-Suit"), asserted by Dao Health ("Dao") in this patent infringement action.

## I.      INTRODUCTION

The Patents-in-Suit relate to a breast milk collection device.  Momcozy proposes claim constructions that remain true to the claim language at issue and are consistent with the intrinsic record.  Dao, on the other hand, proposes that only the phrase "external suction source" should be construed.  But Dao's proposed construction renders the term "external" superfluous, and more importantly, ignores the plain statements of the scope of the invention made in the specification and during prosecution.  For the remaining claim terms, Dao proposes a "plain and ordinary meaning" that would be unhelpful to the jury.  As explained below, Momcozy's constructions should be adopted.

## II.      BACKGROUND OF THE TECHNOLOGY AT ISSUE

### A.      The Prior Art

"Hands-free" breast milk collection devices were known in the art at the time Dao filed its patent applications.  For example, U.S. Patent No. 4,270,538 to Murphy (MA0001–05, "Murphy"), shown below on the left-hand side, disclosed a two-piece breast milk collection device with a round base 10 (green) and a dome-shaped cover 20 (yellow) removably fitted to the base to provide a milk receiving chamber there within.  Murphy, MA0004, 1:58–2:11; MA0002, FIGS.

---

[1] Citations to "JA" are to the parties' Joint Claim Construction Appendix, filed herewith. Citations to "MA" are to Momcozy's Appendix in Support of its Opening Claim Construction Brief, also filed herewith.

1–2.  The Murphy base 10 has a concave surface 30 shaped as a funnel and intended to function as a breast adapter to receive a woman's breast.  *Id*. at MA0004, 2:54–57.  The Murphy cover 20 (yellow) surrounds the base 10 to operate as a reservoir defining an internal volume 60 to collect breast milk expressed from the woman's breast.  *Id*. at MA0005, 3:14–21.  The Murphy collection device is placed over the breast and fits within a woman's brassiere to allow for hands-free use. *Id.* at MA0004, 1:60–61, 2:50–60.



**MURPHY**             **MYERS**

It was also known in the art to use a pump in combination with a one-way valve to enhance the collection of breast milk in a "hands-free" manner.  For example, U.S. Patent No. 7,223,255 to Myers et al. (MA0006–50, "Myers"), discloses "a straw-hat shaped breast 'flange' 30," that acts as a funnel shaped adaptor for sealingly receiving a woman's breast and a valve 140 disposed between the adaptor 30 and a collection bag 300 with an internal volume for collecting breast milk from the adaptor 30.  Myers, MA0043, 3:65–4:1; MA0028, FIG. 20B (above).  An "internal" pump—in the form of a servomotor mechanism 24, batteries 26, and a lever-arm system 100 with a piston cylinder 25—is contained within the space defined by the adaptor 30 and a dome-shaped housing shell 12.  *Id*. at MA0043–44, 4:1–9, 4:53–5:7; MA0010, FIG. 5; MA0017, FIG. 11A;

MA0018, Fig. 11B. "Upstroke" and "downstroke" action of the pump 24 alternately generates and releases vacuum pressure such that milk expressed by the breast and collected in the funnel-shaped adaptor 30 flows through the one-way valve 140 and into the reservoir 300. *Id*. at MA0045, 7:37–60. The Myers internal pump is "integrated inside the pump 10" and "exclusively supported by the bra and the negative pressure created between the breast and the flange 30 by the servomotor mechanism 24 and the lever arm system 100." *Id*. at MA0043–44, 4:53–5:7.

### B. The Dao Patents-in-Suit

The breast milk collection device disclosed in Dao's '915 patent is shown on the right-hand side below next to the Murphy collection device. Like Murphy, the Dao '915 collection device includes a breast adapter (green) that conforms to a woman's breast and a reservoir (yellow) that receives the adapter in an internal volume defined by the reservoir. The Dao '915 collection device adds to Murphy by being connected to an external pump 12 that provides suction to the adapter.



| MURPHY | DAO '915 PATENT |

The Dao '772 patent, which issued from a continuation-in-part of the application that became the '915 patent, adds an embodiment not found in the Dao '915 patent in which a valve assembly 250 (shown in Figs. 16 and 18 below) is disposed between the funnel shaped adapter and

the reservoir. The valve assembly alternately opens and closes communication between the breast adaptor and the reservoir. '772 Pat., JA0021, Abstract.



**DAO '772 PATENT**

The valve assembly 250 has a valve body 252 (orange), a valve cap 254 (blue) mounted concentrically on the valve body 252, and a valve flap 256 (red) attached to the valve cap 254. *Id.* at JA0049 at 16:29–32. The valve assembly 250 fits over the end 219 of the breast adaptor 216 (shown in green). *Id.* at 16:32–34. The valve assembly 250 includes a baffle structure 260 (blue) attached to the valve cap 254 to prevent milk from back flowing into the vacuum line. *Id.* at 16:44–49. The disclosed valve assembly 250 is not surrounded by the breast adaptor 216 and the reservoir 218. Instead, the valve assembly 250 itself surrounds the drip tube 219 of the breast adaptor 216. *Id.* at JA0034–36, FIGS. 15–18.

The Dao '646 patent is not a family member of the earlier-filed applications that became the '915 and '772 patents. The '646 patent claims, therefore, must be directed to a breast milk collection device structure that is patentably distinct from the collection devices disclosed by the prior art Dao '915 and '772 patents or else they are invalid.

The collection devices disclosed in the '772 patent (left hand side) and the '646 patent (right hand side) are shown below. Both patents disclose a collection device with a funnel (green) that has a wide end adapted to receive a woman's breast and a narrow end that forms a drip tube and a reservoir (yellow) that, according to the patents, encloses the funnel to form a single unit and is adapted to receive breast milk. Both disclose a valve assembly with a valve body (orange) and a valve element (red). The '772 patent discloses that a duckbilled valve (reference numeral 70 as shown in Fig. 3 of the '646 patent, right-hand side below in red) may be used as an alternative to the valve flap 256 (as shown in Figs. 11C and 18 of the '772 patent, left-hand side below in red). '772 Pat., JA0048, 14:14–17; *see also* '915 Pat., JA0018, 10:7–10; JA0009, FIG. 11C.



| **DAO '772 PATENT** | **DAO '646 PATENT** |

In the '772 patent (left hand side), milk passes through an open distal end 264 of the drip tube 219 (shown in light blue) and through an open end 264a, 264b of the valve assembly 250. On the other hand, in the '646 patent (right hand side), the passages (shown in light blue) formed in the drip tube 26 and the valve assembly 42 consist of aligned apertures 28, 48 in the drip tube 26

and the sleeve 44 of the valve assembly 42. '646 Pat., JA0063–64, 3:35–38, 3:49–55, 4:65–5:6. Unlike the '772 patent, in the '646 patent the aligned apertures 28, 48 are adjacent to, but not a part of, the distal end 30 of the drip tube 26—which is a solid wall structure.

The various claim constructions are set forth below.

## III.  APPLICABLE LEGAL STANDARDS

### A.  Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the [alleged] invention.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  The claim construction process begins with consideration of the intrinsic evidence—the claims, specification, and the prosecution history.  *See id.* at 1314–15, 1317.  A claim term is generally given its ordinary and customary meaning as it would be determined by a person of ordinary skilled in the art [("POSA")] at the time of the alleged invention.  *See id* at 1312–13.  The patent specification is the "single best guide to the meaning of a disputed term."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Because the purpose of the specification is to provide a "full...and 'exact' description of the claimed invention," 35 U.S.C. § 112(a), the specification "is, thus, the primary basis for construing the claims."  *Phillips*, 415 F.3d at 1315.

"[W]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question."  *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1372 (Fed. Cir. 2012).  A disclaimer exists in situations where the specification (1) distinguishes or disparages prior art based on the absence of a feature, (2) describes "the present invention" as including a particular feature, and/or (3) indicates that certain features are "required" for success.  *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d

6

1021, 1024–25 (Fed. Cir. 2015); *see also Poly-America, L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136–37 (Fed. Cir. 2016); *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 993–97 (Fed. Cir. 2016).

The prosecution history of a patent also is important to claim construction. *See Phillips*, 415 F.3d at 1317. Consisting of the complete record of proceedings before the United States Patent and Trademark Office ("USPTO"), "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution." *Id.*

"The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.' Accordingly, 'where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender.'" *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (quoting *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988) and *Omega Eng'g., Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003)). All statements in a patent's file history made by an Applicant that characterize or distinguish the purported invention are relevant. *See, e.g., Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015) ("Any explanation, elaboration, or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to 'capture the scope of the actual invention' that is disclosed, described, and patented.'").

### B. Indefiniteness

A patent must describe the "exact scope of an invention" so that the applicant secures his or her right to "all to which he is entitled" while informing "the public of what is still open to

them." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996). Claim indefiniteness is matter of claim construction. *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012).

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). In *Nautilus*, the Supreme Court rejected the prior standard under which claims were considered indefinite only if "insolubly ambiguous." *Id.* The Court explained that the prior standard was too lax by "tolerat[ing] imprecision just short of that rendering a claim 'insolubly ambiguous'" and thereby "foster[ing] the innovation-discouraging 'zone of uncertainty.'" *Id.* at 911. It is no longer "sufficient that a court can ascribe *some* meaning to a patent's claims;" instead, a patent must make clear to one skilled in the art the boundaries of the claimed invention. *Id.* (emphasis in original). "[A] patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Id.* at 909 (quotation marks omitted).

To determine whether a term is indefinite, the Court should examine the claims, specification, and prosecution history "to ascertain if they convey to one of skill in the art with reasonable certainty the scope of the invention claimed." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015).

## IV. CONSTRUCTION OF THE DISPUTED CLAIM TERMS

### A. U.S. PATENT NO. 7,559,915

#### 1. "external suction source" (claims 1, 2, 6, 7, 15, 16, 18, 33)

| *Claim Term* | *Dao Health's Proposed Construction* | *Defendant's Proposed Construction* |
|---|---|---|
| "external suction source" | "the suction source is located outside the internal volume of the reservoir" | "a suction source that is located outside of the brassiere cup" |

8

The term "external suction source" refers to the location of the claimed suction source relative to the brassiere that holds the breast milk collection device. An "external suction source" is one that is located outside of the brassiere. That is, the suction source is located such that it is not contained within or supported by the brassiere. Not only does the specification support this construction, but the prosecution history confirms it is correct.

The invention of the '915 patent is a breast milk collection device located inside the brassiere, while the suction source or pump is located outside the brassiere. Claim 1 states that "the breast milk collection device" is secured within a brassiere. '915 Pat., JA0015, 11:25–27. The "external suction source" should logically be construed as located outside the brassiere.

The patent specification is consistent in distinguishing between pumps that are "internal" as compared to those that are "external" relative to a brassiere. In criticizing the prior art, the Background explains that the "greatest shortcoming" in a prior art Whisper Wear device (i.e., the commercial embodiment of the device 10 described in Myers) is the use of a pump located within a brassiere. Because it is located within and supported by the brassiere, its relatively small size provides an insufficient suction as compared to large tabletop electric pumps. '915 Pat., JA0015, 3:52–58. Such a large pump is necessary to meet the needs of many women. *Id.* at 4:2–6, 4:54–55. The '915 patent further disparages the Whisper Wear integrated pump and battery, asserting it is "much heavier when worn hands-free within a brassiere, than [those assemblies] which use tabletop electric pumps" and "the weight and placement of the Whisper Wear devices within the bra can pinch some milk ducts, while simultaneously emptying others." *Id.* at 3:62–4:2.

According to the inventors, "a need exists for a breast milk collection device that can fit *completely within* a woman's standard brassiere." *Id.* at 4:47–49 (emphasis added). Indeed, the "object[]" of the invention is a breast milk collection device "which can be placed within a

woman's existing brassiere." *Id.* at JA0016, 5:34–35. The Summary explains that the invention is a "human breast milk collection device that fits into a mother's existing nursing or standard brassiere," and that "can be attached to a regular electric pump." *Id.* at 5:6–11. This disclosure teaches that the "regular electric pump" suction source is one that is located external to the woman's brassiere. Ex. A, Decl. of Ryan Bauer ("Bauer Decl."), ¶ 31. A POSA would understand the invention to be directed to "an external suction source" that is completely outside of the brassiere such that it is neither contained within nor supported by the brassiere. *Id*.

The patent specification is consistent in its disclosure of items "external" to a brassiere. In its disclosure of the invention as compared to prior art devices, the specification refers to disadvantages of prior art "external" collection bags that are located outside of the brassiere: "The fact that the reservoir 18 fits into a brassiere cup 32 obviates the need to have external collection bags or bottles located outside of the brassiere cup." '915 Pat., JA0017, 7:34–36.

During prosecution, Mr. Garbez, a named inventor, submitted a Declaration to the USPTO to distinguish the claims from the prior art. He explained that the claimed "invention" is adapted to work with either "external heavy duty" or "external lightweight" portable breast pumps. '915 Pat. Prosecution History, JA0065–457 at JA0164–75. According to Mr. Garbez, "heavy duty vacuum pumps" located external to the bra were necessary for effective breast milk expression:

> First, Murphy does not disclose or suggest the funnel shaped **breast pump breast adaptor** of our invention that can be used in combination with either an external heavy duty or an external lightweight portable breast pump. . . . The heavy duty vacuum pumps our claimed invention are adapted to work with are able to draw the nipples of most women well into the tubular extension of the funnel shaped adaptor to cause milk to be expressed, which is necessary to be effective for most lactating women.

*Id*., JA0165, ¶ 4.

The inventor further distinguished the claims from the prior art Lundy (U.S. Pat. No. 6,379,327, MA0051–60) and Myers devices by reference to the location of the suction source

10

relative to a woman's bra.  *See id*. at JA0168, ¶ 10.  To emphasize the point, the inventor distinguished the Myers device because, unlike the Dao invention, Myers had an "internal" pump that is supported within the brassiere:

> Myers discloses a substantial and comparatively heavy pump mechanism that is dome shaped so the entire mechanism can be supported within the bra, just as our funnel shaped adaptor and milk collection reservoir is.  However, Myers' milk collection reservoir is external to the lactating woman's bra, to keep the lactated milk away from the pump.  ***In relation to the woman's bra, our pump is external, while our milk collection reservoir is internal, and Myers' pump is internal, while his milk collection reservoir is external***.

*Id*. at JA0169, ¶ 11 (emphasis added, original emphasis omitted).  Mr. Garbez argued that one skilled in the art would not be motivated to modify Myers to include an integrated reservoir along with an internal pump because that "would only add more weight directly onto the lactating woman's breasts . . . and Myers' device is already too heavy."  *Id*. at JA0170, ¶ 13; *see also id*. at JA0172, ¶ 17.  Mr. Garbez further argued that its invention "achieves heavy duty suction, concealed use, hands free operation, a comfortable light weight device because the pump works are not internal to our device, and unexpected mobility with a hospital grade pump."  *Id*. at JA0170, ¶ 13.

These unequivocal statements as to the scope of the "invention" were made to obtain allowance of the claims.  They operate as a clear and unmistakable disclaimer of coverage to suction sources that are contained in or supported by a women's bra.  *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324 (Fed. Cir. 2009) ("A patentee may, through a clear and unmistakable disavowal in the prosecution history, surrender certain claim scope to which he would otherwise have an exclusive right by virtue of the claim language."); *Tech. Props. Ltd. LLC v. Huawei Techs. Co.*, 849 F.3d 1349, 1358–59 (Fed. Cir. 2017) (affirming narrowed construction based on arguments made to distinguish prior art).

11

Dao's construction that requires the suction source to be "located outside the internal volume of the reservoir" is no limitation to the claims at all and would render superfluous the requirement that that the suction source be "external."  The claims refer to a "reservoir" with an "internal volume" that receives breast milk.  JA0019 at 11:30–32.  The "internal volume of the reservoir," however, need not occupy the entirety of the reservoir but instead, it can refer to some amount of air or space that occupies the reservoir until milk is received in the reservoir.  A pump (or other physical object) located in the reservoir will necessarily displace the "internal volume" available to collect milk.  Bauer Decl., ¶ 36.  Therefore, any suction source location under Dao's proposed construction is "external" to the internal volume of the reservoir.  *Id*.  Because Dao's construction is no limitation at all, it cannot be correct.  *See, e.g., Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim."); *see also CUPP Cybersecurity, LLC v. Trend Micro, Inc.*, No. 3:18-CV-1251-M, 2021 WL 5865393, at *5–7 (N.D. Tex. Dec. 10, 2021) (rejecting patentee's "effectively meaningless" proposed construction that also lacked support in the specification).  But even if it did somehow limit the claims, Dao's construction finds no support from the patent specification or prosecution history.  Bauer Decl., ¶¶ 28–37.  It should therefore be rejected.

Both the '915 patent specification and prosecution history thereof support a clear and unmistakable disclaimer of suction sources that are contained within or support by a woman's brassiere, and thus support Momcozy's proposed construction.  Accordingly, the claimed external suction source refers to a suction source located external of the brassiere.

**2.** **"a reduced volume within said reservoir . . . said reduced volume formed within said drip tube" (claim 16)**

| Claim Term | Dao Health's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "a reduced volume within said reservoir . . . said reduced volume formed within said drip tube" | Plain and ordinary meaning | Indefinite |

Claim 16 of the '915 patent refers to a "reservoir" that has "an internal volume" that receives breast milk. '915 Pat., JA0020, 13:11-43 at 13:20–29 (claim 16). The claim requires the reservoir to include "a reduced volume," but elsewhere requires the "reduced volume" to be "detachably connected to an external suction source" and "formed within said drip tube" by "said valve closing off the aperture and creating said reduced volume within said drip tube." The "reduced volume," therefore, must be (1) part of the "reservoir," (2) detachably connected to an external suction source, and (3) part of the "drip tube" but created only when the valve is closed. Because these requirements are internally inconsistent and against ordinary physical constraints, the claim is invalid for indefiniteness.

The "reduced volume" referred to in the claim would be understood by a person skilled in the art as the space occupied within the confines of structure expressed in the claim. Bauer Decl., ¶ 38. The claim language requires the "reduced volume" to be "within the reservoir" ('915 Pat., JA0020, 13:24), which would be understood by a POSA as a volume located within the confines of the defined reservoir. Bauer Decl., ¶ 38. But the claim also requires the "reduced volume" to be "adapted to be detachably connected to an external suction source." JA0020, 13:24. It is not possible to connect an external suction source to empty space. A "volume" is not structure that a person skilled in the art would understand to be "detachably connected" to something else. Bauer Decl., ¶ 39. That is, the "reservoir" or the "drip tube" might be so connected, but not the volume defined in them. *Id.*

The claim language also defines the "reduced volume" to be created in the drip tube, but it is so created only when the valve is closed. '915 Pat., JA0020, 13:36–38. This would be understood by a POSA as a separate volume as compared to the volume of the reservoir. Bauer Decl., ¶ 40. In the claim, however, the "volume" in the reservoir and the volume in the drip tube must be the same, as both define the "reduced volume." Bauer Decl., ¶ 41. A POSA would understand the two structures cannot define the same "reduced volume" if the "reduced volume" is only created when the valve is closed. *Id*.

Nor does the patent specification provide how a "reduced volume" within the reservoir can also be within the drip tube, such that a POSA would understand the scope of the claimed invention. *Id*. ¶ 42. For example, the '915 Patent specification provides no definition of "a reduced volume within said reservoir . . . said reduced volume formed within said drip tube" to allow a POSA to understand this claim limitation with reasonable certainty. *Id*. ¶ 42. Instead, the specification discloses that there is a "drip tube volume 70" which is the "volume extending from the front of the nipple 34 to the distal end 28 of the drip tube 24 that is closed off by valve 74." '915 Pat., JA0018, 9:60–67. But when the valve is closed, the "drip tube volume" is not a "reduced volume" of a reservoir because it is separated from the reservoir. Bauer Decl., ¶ 42.

Because the claim language and specification provide no guidance as to the metes and bounds of "a reduced volume within said reservoir" that is "adapted to be detachably connected to an external suction source" and at the same time be "said reduced volume formed within said drip tube," claim 16 is invalid for indefiniteness.

14

### B.    U.S. PATENT NO. 8,118,772

#### 1.    "a valve assembly" (claims 1, 2, 4, 5, 8, 11, 14, 26, 34)

| *Claim Term* | *Dao Health's Proposed Construction* | *Defendant's Proposed Construction* |
|---|---|---|
| "a valve assembly" | Plain and ordinary meaning | "an assembly of multiple parts forming a valve" |

The dispute for this term is whether the meaning of "assembly" requires more than one part.  Momcozy submits that the term "assembly" should be construed consistent with its plain meaning, to refer to a collection of multiple parts.  "Assembly", Webster's New Collegiate Dictionary (1981 ed.), MA0061–63 ("assembly" requires "collection of parts so assembled").  Consistent with the plain meaning of "assembly," a "valve assembly" refers to "an assembly of multiple parts forming a valve."  This construction satisfies the remaining claim language that the valve assembly functions to "alternately [open] and [close] fluid communication between the adaptor and the reservoir," as in claim 1 of the '772 patent.  Bauer Decl., ¶ 43. Accordingly, a one-piece valve is not a "valve assembly."

The patent specification consistently describes "the valve assembly" as a collection multiple parts assembled together to form a valve.  For example, the Abstract refers to the valve assembly as functioning to "alternately [open] and [close] communication between the breast adaptor and the reservoir." '772 Pat., JA0021, Abstract; Bauer Decl., ¶ 44..  The Summary of the Invention confirms that a "valve assembly" is a valve formed from multiple pieces, specifying that the "valve assembly" includes "a valve body, a valve cap mounted concentrically on the valve body, and a valve flap attached to the valve cap."  *Id*. at JA0045, 8:50–53; Bauer Decl., ¶ 45.  The Summary, therefore, specifies that the valve assembly has multiple components that cooperate together to alternately open and close communication between the breast adaptor and the reservoir.

15

The Detailed Description portion of the patent specification is in accord. The specification discloses a valve assembly 250 (Figs. 16 and 18 reproduced below), which has a valve body 252 (orange), a valve cap 254 (blue) mounted concentrically on the valve body 252, and a valve flap 256 (red) attached, in turn, to the valve cap 254. *Id*. at JA0049, 16:29–32; Bauer Decl., ¶ 46. The valve assembly 250 fits over the end 219 of the breast adaptor 216 (shown in green) and "alternately opens and closes communication between the breast adaptor 216 and the reservoir 218 as the vacuum pump (not shown) alternates between a negative or vacuum pressure and approaches a neutral or positive pressure." *Id*. at 16:32–39. When the multiple pieces of the valve assembly 250 are mounted to the adaptor 216, the flap valve 256 "releasably closes off aperture 264*b* formed in the valve cap 254," which is "in communication with larger aperture 264*a* in valve body 252, and with aperture 264 at second end 219 of adaptor 216." *Id*. at JA0050, 17:19–23. The "valve assembly" components thus cooperate together to "alternately [open] and [close] fluid communication between the adaptor and the reservoir" as recited in claim 1. *See also id*. at 17:52–67; Bauer Decl. ¶¶ 47–48.



**DAO '772 PATENT**

Dao, on the other hand, is expected to argue that the term "assembly" can be ignored altogether or otherwise includes parts that do not perform the open/close function. That is because the accused products have a single molded component valve that, due to its elasticity, has side walls that operate to open and close. However, consistent with the plain meaning of "assembly," a "valve assembly" refers to "an assembly of multiple parts forming a valve."

**2. "a valve assembly disposed between and surrounded by the adaptor and the reservoir" (claims 1, 2, 4, 5, 8, 11, 14, 26, 34)**

| *Claim Term* | *Dao Health's Proposed Construction* | *Defendants' Proposed Construction* |
|---|---|---|
| "a valve assembly disposed between and surrounded by the adaptor and the reservoir" | Plain and ordinary meaning | Indefinite |

The "valve assembly" claim term is important in the context of other claim language. Claim 1 of the '772 Patent requires that the "valve assembly" be "disposed between and surrounded by the adaptor and the reservoir." The valve assembly must therefore be (1) located between the adapter and the reservoir, and (2) surrounded by both the adapter and the reservoir. Because the patent specification does not explain how the valve assembly can be located between the adapter and the reservoir and at the same time be surrounded by them, the claim is invalid for indefiniteness.

The '772 specification shows the valve assembly in relation to the breast adapter (green) and the reservoir (yellow) in Figs. 16 and 17 (below). As explained above, the valve assembly 250 has a valve body 252 (orange), a valve cap 254 (blue) mounted concentrically on the valve body 252, and a valve flap 256 (red) attached to the valve cap 254. '772 Pat., JA0049, 16:29–32.



**DAO '772 PATENT**

The valve assembly 250 fits over the end 219 of the breast adaptor 216 (green).  *Id.* at 16:27–29.

When it is assembled, the "flap valve 256 is flush against the portion of valve cap 254 ***surrounding***

aperture 264 a."  *Id.*, JA0050, 17:35–37 (emphasis added).  The valve cap aperture 264a is aligned

with the valve body aperture 264b, which in turn is aligned with the open end of the breast adaptor

216.  The specification discloses the valve assembly surrounds the breast adapter, not the other

way around.  The valve assembly is not surrounded by the breast adapter at all.  The specification

is therefore contrary to, and at odds with, the claim language.  Bauer Decl., ¶¶ 49–54.

The use of "surrounding" elsewhere in the patent specification is consistent with the

commonly understood meaning of the term.  In disclosing the benefits of a baffle to prevent

bubbling or spraying of milk, the specification refers to the "***surrounding*** walls of the overflow

chamber 258 in the valve assembly 250," which allow milk to drain back down into the adaptor

216 and through the flap valve 256 "into the reservoir 218 during portions of the pumping cycle

when the negative pressure is released."  '772 Pat., JA0050, 18:65–67 (emphasis added); JA0051,

19:1–3.

The valve assembly cannot be both disposed between the breast adaptor and the reservoir and also surrounded by both components. Bauer Decl., ¶¶ 49–54. The specification lacks disclosure to support this claim limitation. Bauer Decl., ¶ 54. As such, a POSA would not understand the scope of the claims. *Id.* ¶ 54.

Because the patent specification does not disclose "a valve assembly disposed between and surrounded by" both the adaptor and the reservoir, and a POSA is unable to understand its scope, claim 1 of the '772 Patent is invalid as indefinite under 35 U.S.C. § 112. Claims 2, 4, 5, 8, 11, 14, 26, and 34, which depend from claim 1, are indefinite for the same reason.

### 3. "external suction source" (claims 4, 5, 8)

| Claim Term | Dao Health's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "external suction source" | "the suction source is located outside the internal volume of the reservoir" | "a suction source that is located outside of the brassiere cup" |

"External suction source" in claims 4, 5, and 8 of the '772 patent should have the same construction as it has in the '915 patent, namely "a suction source that is located outside of the brassiere" such that the suction source is not contained within or supported by the brassiere. *See* Section IV.A.1 *supra*. The '772 patent issued from a continuation-in-part of, and therefore largely shares its specification with, the '915 patent. The same term should be construed consistently across the claims of both patents. *See SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1316 (Fed. Cir. 2015) ("Where multiple patents 'derive from the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.'"); *In re Katz Interactive Call Processing Pat. Litig.*, 639 F.3d 1303, 1325 (Fed. Cir. 2011) ("[W]e ordinarily interpret claims consistently across patents having the same specification"); *see also Cloud Farm Assocs. LP v. Volkswagen Grp. of Am., Inc.*, 674 F. App'x 1000, 1006 (Fed. Cir. 2017) ("The same term should be construed consistently throughout the same patent and any related

patents sharing a common specification.").  And here, the additional material disclosed in the '772

patent does not alter the construction from that proposed for the '915 patent.  *See IP Innovation

LLC v. Mitsubishi Elec. Corp.*, No. 08 C 393, 2009 WL 3617505, at *2 (N.D. Ill. Oct. 29, 2009)

(observing the presumption that "a claim term carries the same meaning throughout a particular

patent and related patents, including a continuation-in-part").

### C.     U.S. PATENT NO. 8,702,646

#### 1.     "a distal end of said drip tube having an aperture adjacent the distal end" (claims 1, 2, 3)

| Claim Term | Dao Health's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "a distal end of said drip tube having an aperture adjacent the distal end" | Plain and ordinary meaning | "a distal end structure of said drip tube having an aperture adjacent to the distal end structure" |

The phrase "a distal end of said drip tube having an aperture adjacent the distal end" should

be construed to mean "a distal end structure of said drip tube having an aperture adjacent to the distal

end structure."  This construction would assist the jury because it provides context for the required

location of the "aperture" that is set forth in the claim in the context of Dao's prior patents. As shown

below, the devices disclosed in the '772 patent (left) and the '646 patent (right) provide different

paths for milk to travel from the drip tube to the valve assembly. Bauer Decl., ¶ 56.



**DAO '772 PATENT**                    **DAO '646 PATENT**

Both patents disclose a collection device with a funnel (green) with a wide end adapted to receive a woman's breast and a narrow end forming a drip tube and a reservoir (yellow) enclosing the funnel to form a single unit and adapted to receive breast milk. Both disclose a valve assembly with a valve body (orange) and a valve (red). And both disclose that a duckbilled valve may be used. *Compare* Fig. 3 of the '646 Patent on right-hand side in red *with* '772 Pat., JA0048, 14:15–17 (indicating that in addition to the flap valve shown in Fig. 18 above, "other types of valves such as a duckbill, or a ball valve could be used in alternative embodiments"); Bauer Decl., ¶ 57.

However, in the '772 patent (left hand side), the passages (shown in light blue) formed in the drip tube and the valve assembly are both concentric with, and form a part of, the distal end of the drip tube and the valve assembly. On the other hand, the '646 patent (right hand side) discloses a distal end 30 of the drip tube 26 that is a solid wall structure. Complementarily-aligned apertures (shown in light blue) formed in the drip tube and the valve assembly are located adjacent to, but do not form a part of, the distal end 30 of the drip tube 26 and the valve assembly 42. A person skilled in the art would understand this difference to be significant in that it allows a flow path that takes advantage of gravity and results in a flow path in a direction away from the external suction source, which is desirable according to the patentee. Bauer Decl., ¶¶ 58–59. Therefore, a claim construction that defines an aperture with reference to a distal end structure of the drip tube is appropriate to distinguish the claims from Dao's own prior art patents. *See Harris Corp. v. IXYS Corp.*, 114 F.3d 1149, 1153 (Fed. Cir. 1997) ("[C]laims should be read in a way that avoids ensnaring prior art if it is possible to do so").

Dao's contentions of infringement indicate that Dao's intended "plain and ordinary" meaning for an aperture that is "adjacent" the distal end of a drip tube can include an aperture formed in the distal end of the drip tube. But this construction provides no distinction between the

asserted claims and Dao's earlier patents and is inconsistent with the specification of the '646 patent. Such a construction would be incorrect. Accordingly, "a distal end of said drip tube having an aperture adjacent the distal end" should be construed to mean "a distal end structure of said drip tube having an aperture adjacent to the distal end structure."

2. **"cyclical application and relief of said vacuum pressure adapted to encourage the expression of breast milk from said breast" and "said cycle portion relieving said vacuum pressure adapted to allow the capture and collection of said breast milk in said reservoir" (claims 1, 2, 3)**

| Claim Term | Dao Health's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "cyclical application and relief of said vacuum pressure adapted to encourage the expression of breast milk from said breast" | Plain and ordinary meaning | Indefinite |
| "said cycle portion relieving said vacuum pressure adapted to allow the capture and collection of said breast milk in said reservoir" | Plain and ordinary meaning | Indefinite |

Claim 1 of the '646 patent has two purely functional limitations: (1) "cyclical application and relief of said vacuum pressure adapted to encourage the expression of breast milk from said breast;" and (2) "said cycle portion relieving said vacuum pressure adapted to allow the capture and collection of said breast milk in said reservoir." The claim provides no identification of structure that performs "cyclical application and relief" of vacuum pressure, nor does it provide any structure for "said cycle portion." Bauer Decl., ¶ 60. The claim further recites these limitations as method steps, which are improper in a device claim. Finally, there is no antecedent basis for the phrases "said vacuum pressure" and "said cycle portion." These purely functional claim elements render claim 1, and dependent claims 2 and 3, invalid for indefiniteness.

A patent claim to a device is indefinite when it contains functional language without recitation of structure and the functional language fails to "'to provide a clear-cut indication of the

scope of subject matter embraced by the claim.'" *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008) (quoting *Application of Swinehart*, 439 F.2d 210, 212–13 (CCPA 1971)).  Here, claim 1 of the '646 patent is directed to a breast milk collection device.  The device has various structural elements which include a funnel, a drip tube with a distal end, a reservoir and a valve assembly.  But there is no indication any of these structural elements in the claim perform the requirement of "cyclical application and relief of said vacuum pressure" or "said cycle portion relieving said vacuum pressure adapted to allow the capture and collection of said breast milk in said reservoir."  Bauer Decl., ¶ 62.  To the extent that some other unrecited structure is intended to perform these functions, the claim does not specify that structure or how it is connected to any other structure in the claim.  *Id*.  The claim uses only functional language in its requirement of cyclical application and relief of vacuum pressure and a "cycle portion" without the recitation of any structure, and a POSA would have no understanding as to what, if any, additional structure is necessary to satisfy the claim.  *Id*. at ¶¶ 60–64.  For this reason, the claim is invalid for indefiniteness.  *See, e.g*., *Cisco Sys. Inc. v. Ramot at Tel Aviv Univ. Ltd.*, No. CV 21-1365-GBW, 2024 WL 4751590, at *7–8 (D. Del. Nov. 12, 2024) (ruling, on claim construction, that claims to a system reciting "wherein the N bits of the N bit digital input data word are mapped" were indefinite because the structure doing the mapping function was not identified, and explaining that "[n]othing in the claim language suggests that 'a component in the system contains the functionality described' . . . [or] that the 'wherein . . . are mapped' limitation is 'a functional limitation on components recited in the claims'").

The recitation of "cyclical application of relief of *said vacuum pressure*" and "*said cycle portion* relieving said vacuum pressure adapted to allow the capture and collection of said breast milk in said reservoir" also renders the claim indefinite.  There is no antecedent for either "said

vacuum pressure" or "said cycle portion." A claim is indefinite if a term lacks proper antecedent basis and "such basis is not otherwise present by implication or the meaning is not reasonably ascertainable." *Halliburton*, 514 F.3d at 1249.

Both "said vacuum pressure" and "said cycle portion" refer to un-recited structure, and one skilled in the art finds no guidance as to the metes and bounds of the claim. Bauer Decl., ¶ 64. Here, claim 1 of the '646 patent sets forth various structural elements including a funnel, a drip tube with a distal end, a reservoir and a valve assembly. None of these relates to either "said vacuum pressure" or "said cycle portion," and the basis for these terms is not found by implication. Furthermore, the meaning of these terms is not otherwise reasonably ascertainable. *Id*.

The noted functional limitations amount to, at best, method steps to be performed during use of the device. *Id*. at ¶ 62. Claim 1 is also invalid for indefiniteness because it recites "both an apparatus and a method of using that apparatus" in violation of Section 112, paragraph 2. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (citing *Ex parte Lyell*, 17 U.S.P.Q.2d 1548 (B.P.A.I. 1990)); *see also Lecat's Ventriloscope v. MT Tool & Mfg*., 351 F. Supp. 3d 1100, 1123 (N.D. Ill. 2018) ("Because claim 1 recites an apparatus as well as a method step of using the apparatus, it is indefinite[.]") (citing cases); *Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc*., No. CV 13-2012-SLR, 2015 WL 7295436, at *5 (D. Del. Nov. 18, 2015) (ruling, on claim construction, that an apparatus claim was indefinite because a POSA could not tell if the claim recited a step to be performed by the user or just a capability of the system).

### 3.  "through said interior chamber" (claim 3)

| Claim Term | Dao Health's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "through said interior chamber" | Plain and ordinary meaning | Indefinite |

Claim 3 refers to opening of the valve "to allow milk to advance from said drip tube through ***said interior chamber*** and into said reservoir."  However, the claim lacks antecedent basis for the "interior chamber" through which the milk advances.  Claim 3 is invalid because the basis for "interior chamber" is not otherwise present by implication and the meaning is not reasonably ascertainable.  *Halliburton*, 514 F.3d at 1249; Bauer Decl., ¶ 65.  Claim 3 is therefore invalid for indefiniteness.

Both claims 2 and 3 of the '646 patent depend from claim 1.  Claim 2 does specify that there is "an interior chamber" located in "a valve mounting assembly," and that the interior chamber extends "between said aligned aperture in said drip tube and said second aperture in said sleeve." '646 Pat., JA0064, 6:50–52.  Unlike claim 2, however, neither claim 3 (nor claim 1 from which claim 3 depends) provides antecedent basis for the claim term "interior chamber."  And unlike claim 2, there is no requirement in claim 3 of "a valve mounting assembly" or any specification for where the interior chamber is located.  Therefore, a POSA would not know where the interior chamber is located or whether additional elements, such as a valve mounting assembly that provides an interior chamber between "said aligned aperture in said drip tube and said second aperture in said sleeve" are required elements in the claim.  Bauer Decl., ¶ 66.  A POSA would therefore not understand the scope of this claim limitation.  *Id.*  Claim 3 is therefore invalid for indefiniteness.

## V.  CONCLUSION

Accordingly, Momcozy requests that the Court adopt its proposed constructions.

Dated: January 8, 2025          Respectfully submitted,

                             LEYDIG, VOIT & MAYER, LTD.

                             By: */s/ Steven H. Sklar*
                             Steven H. Sklar
                             Gregory C. Bays
                             Nicole E. Kopinski
                             Pei Raymond Chen, Ph.D. (*pro hac vice* forthcoming)
                             ssklar@leydig.com
                             gbays@leydig.com
                             nkopinski@leydig.com
                             rchen@leydig.com
                             Two Prudential Plaza, Suite 4900
                             180 North Stetson Avenue
                             Chicago, IL 60601
                             Telephone: (312) 616-5600
                             Facsimile: (312) 616-5700

                             *Attorneys for Defendant,*
                             *Shenzhen Lutejiacheng Technology Co., Ltd.*

## <u>CERTIFICATION PURSUANT TO LOCAL PATENT RULE 4.1(b)</u>

Pursuant to Local Patent Rule 4.1(b), Momcozy states that it believes that the following terms submitted for construction herein are outcome-determinative:

- '915 patent – "External suction source" (all asserted claims as to some accused products)

- '772 patent – "External suction source" (claims 4, 5, 8 as to some accused products)

- '772 patent – "a valve assembly disposed between and surrounded by the adaptor and the reservoir" (all asserted claims)

- '646 patent – "a distal end of said drip tube having an aperture adjacent the distal end" (all asserted claims as to some accused products)

- '646 patent – "cyclical application and relief of said vacuum pressure adapted to encourage the expression of breast milk from said breast" and "said cycle portion relieving said vacuum pressure adapted to allow the capture and collection of said breast milk in said reservoir" (all asserted claims)

_s/ Steven H. Sklar_
Steven H. Sklar
LEYDIG, VOIT & MAYER, LTD.

1

## CERTIFICATE OF SERVICE

I hereby certify that on January 8, 2025, a true and correct copy of the foregoing document was caused to be served on the following counsel of record via the Court's electronic filing system:

| | |
|---|---|
| Howard B. Rockman<br>ROCKMAN, VIDEBECK & O'CONNOR, LLC<br>1S376 Summit Avenue, Court C<br>Oakbrook Terrace, IL 60181<br>Telephone: (630) 627-4552<br>*rockman@rvoiplaw.com* | Yanling Jiang<br>Yi Bu<br>JIANGIP<br>33 West Jackson Blvd.<br>Chicago, IL 60604<br>Telephone: (630) 733-9483<br>*yanling@jiangip.com*<br>*ybu@jiangip.com* |
| Meng Xi<br>Shawn Blackburn<br>Samuel Drezdzon<br>SUSMAN GODFREY LLP<br>1000 Louisiana Street, Suite 5100<br>Houston, TX 77002<br>Telephone: (713) 551-9366<br>*mxi@susmangodfrey.com*<br>*sblackburn@susmangodfrey.com*<br>*sdrezdzon@susmangodfrey.com* | Tanner Laiche<br>SUSMAN GODFREY LLP<br>401 Union Street, Suite 3000<br>Seattle, WA 98101<br>Telephone: (206) 516-3880<br>*tlaiche@susmangodfrey.com* |

*Attorneys for Plaintiff,*
*Dao Health*


/s/ Steven H. Sklar
Steven H. Sklar
LEYDIG, VOIT & MAYER, LTD.