**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DAO HEALTH,<br><br>Plaintiff,<br><br>v.<br><br>SHENZHEN LUTEJIACHENG TECHNOLOGY CO., LTD.,<br><br>Defendant. | Civil Action No. 1:23-cv-04885<br><br>Judge Thomas M. Durkin<br>Magistrate Judge Beth W. Jantz<br>Special Master Maura R. Grossman<br><br>**JURY TRIAL DEMANDED** |

**MINUTES OF THE JULY 17, 2026 HEARING BEFORE THE SPECIAL MASTER**

Pursuant to the Court's Order Appointing Special Master (Dkt. 246), Special Master Maura R. Grossman conducted a web conference commencing at 1:00 PM Central Time on July 17, 2026 (hereinafter, "Hearing"), to resolve Plaintiff Dao Health's ("Dao Health") Omnibus Motion to Compel Defendant Shenzhen Lutejiacheng Tech. Co., Ltd. ("Momcozy") Regarding Issues 2, 6, 7, and 8 identified in the Parties' Joint Status Report (Dkt. 254) ("Dao Health's Motion").

These Minutes were prepared and agreed to by the parties to summarize the proceedings of the Hearing.

## I. ATTENDEES

In addition to Special Master Grossman, the following individuals were present on behalf of the parties during the Hearing:

- **For Plaintiff Dao Health:** Ms. Meng Xi and Mr. Tanner Laiche, both of Susman Godfrey LLP.
- **For Defendant Momcozy:** Ms. Kelly Del Dotto, Mr. Philip Chen, and Mr. David Barkan, all of Fish & Richardson.

## II. MINUTES OF PROCEEDINGS

### A. Brief Sections II.A–B: Affiliate Discovery and Corporate-Structure Interrogatories (ROGs 10, 17, and 18)

1. Dao Health argued that Momcozy's affiliate objection and corporate-structure responses treated related entities as outside discovery while relying on shifting descriptions of those entities' roles. Dao Health argued that Momcozy maintained categorical objections to searching materials in the possession, custody, or control of affiliates, declined to prepare witnesses on affiliate records and search scope, and later asserted that the dispute was moot because relevant affiliate records were already on searched because they were alleged stored on Momcozy systems. Dao Health contended that those assertions could not be accepted without a complete corporate map, verified interrogatory supplements, and disclosure of the repositories, custodians, and search methodology used. Dao Health requested an order overruling the affiliate objection and requiring production of responsive, non-privileged materials from Momcozy-controlled affiliates involved with the accused products at any point.

2. Momcozy acknowledged inconsistencies in its supplemental interrogatory responses and terminology, including language attributable to prior counsel, and agreed to amend all three interrogatory responses, as follows:

    a. For ROG 10, Momcozy agreed to update its response by identifying current affiliates; addressing Shenzhen Jingdan E-Commerce Co., Ltd.'s current legal representative; providing a brief explanation why Shenzhen Shengshi Sunshine Enterprise Planning Co., Ltd. is no longer an affiliate; producing an updated corporate organizational chart identifying the relationships among the entities and each entity's legal representative; consulting with its client and identifying the chief executive officers, board members,

and/or managers requested by ROG 10; and correcting the inconsistent use of affiliate, third-party, and related-entity terminology.

b. For ROG 17, Momcozy agreed to supplement its response to clarify the legal and organizational relationships among relevant entities; correct the inconsistent use of affiliate, third-party, and related-entity terminology; provide predecessor and successor information for its affiliates; accurately describe each entity's role concerning the accused devices; identify which affiliate, if any, purchased accused devices from ODMs for Paruu or PiBur products, imported, distributed, marketed, serviced, or fulfilled product orders; clarify which entities received platform services from Momcozy and whether the list of such services was complete; and describe with specificity the services Momcozy provided to each affiliate and during which time period.

c. For ROG 18, Momcozy agreed to supplement its response to identify each entity involved in making, using, selling, offering for sale, or importing Paruu or PiBur products; correct the inconsistent use of affiliate, third-party, and related-entity terminology; accurately describe each entity's complete role concerning the Paruu or PiBur products; confirm and correct missing entities and individuals, including Shenzhen Kong E-Commerce Co., Ltd. and Hong Kong Lute Technology Co.; clarify the roles of identified entities with respect to the Paruu and PiBur products, including entities handling marketing, distribution, logistics, customer service, pricing, or fulfillment; identify the time period of involvement for each entity; and identify current persons most knowledgeable for each entity.

3. Special Master Grossman **ordered as follows:**

a. Momcozy shall serve amended and corrected supplemental responses to ROGs 10, 17, and 18 by July 31, 2026, incorporating all information Momcozy promised to provide in paragraph 2 above.

b. Momcozy shall provide a declaration from Momcozy or from Fish & Richardson by August 14, 2026, after consulting with its client, stating what was collected and searched, what was withheld, and whether any affiliate-related documents were withheld or remain to be produced. The declaration shall identify, for each relevant entity identified in response to Momcozy's Amended Response to Interrogatory Nos 17 and 18:

   i. whether the entities records are kept on separate or shared systems;

   ii. the repositories, shared drives, servers, folders, devices, accounts, and other custodial or non-custodial data sources collected and searched;

   iii. the collection criteria and search or selection methods used;

   iv. who performed the collection and search—such as prior counsel, e-discovery vendors, or Momcozy employees—and whether each repository was completely collected or whether search terms or other narrowing criteria were applied;

   v. whether any documents were withheld from production because they were in the possession, custody, or control of affiliates or related affiliate operations;

   vi. whether, after reasonable inquiry, any additional responsive, non-privileged affiliate materials in the possession, custody, or control of Momcozy's affiliates are reasonably available to Momcozy and have not yet been produced.

c. Special Master Grossman confirmed that the provision of this information would not constitute a waiver of any attorney-client privilege.

d. Special Master Grossman additionally cautioned Momcozy's current counsel not to take prior counsel's representations at face value and directed Fish & Richardson to assure itself that any search and collection efforts were thoroughly and diligently undertaken and to ascertain whether any responsive, non-privileged affiliate documents were withheld.

e. The Special Master noted that document production relating to affiliates must follow a step-by-step approach. First, the supplemental interrogatory responses will comprehensively identify Momcozy's affiliates, past and present. Second, Dao Health will identify the affiliates for which it wants confirmation regarding whether they maintain separate business records or store records on Momcozy's servers. Third, Momcozy will confirm and address any outstanding document production.

**B. Brief Section II.C: Interrogatory 1 Concerning Momcozy's First Awareness of Dao Health and the Patents-in-Suit**

1. Dao Health argued that Momcozy's ROG 1 response did not answer the core non-privileged facts concerning first knowledge of Dao Health and the patents-in-suit. Dao Health noted that Momcozy's position moved from no awareness until service of the complaint to the later production of a 2021 document identifying Dao Health's patents, and argued that the surrounding facts—who commissioned, received, reviewed, circulated, or understood the document; when that occurred; and what business steps followed—are not privileged merely because counsel may have been involved. Dao Health requested a verified amended response based on a reasonable investigation, not merely a description of what appears on the face of the document.

2. Momcozy agreed that the factual circumstances surrounding first knowledge are not privileged, but explained that the 2021 document was collected from a noncustodial central repository—not from an email or laptop—so no sender, recipient, or custodian can be identified. Momcozy's counsel represented that no one currently at Momcozy has information about the document's origins or who possessed it and offered to amend the interrogatory response to state the same.

3. Special Master Grossman **ordered** that Momcozy shall amend the response to ROG 1 to affirmatively state, if true, that a reasonable investigation was conducted and that no additional information is available to Momcozy, or otherwise provide additional non-privileged factual information related to the document, including who commissioned, requested, received, reviewed, circulated, or read the document; when that occurred; who was the custodian of the document; how the document was maintained or collected; and what non-privileged business steps followed.

### C. Brief Section II.C: Interrogatory 9 Concerning Persons Most Knowledgeable (PMK) About Certain Topics

1. Dao Health argued that Momcozy's ROG 9 response did not provide usable witness identifications. Dao Health emphasized that the interrogatory sought three knowledgeable persons by accused device and topic, but Momcozy identified only four individuals total across 19 accused products, three brands, and 13 topics. One of the four individuals was later described as no longer employed, and the others could not (and sometimes refused to) provide substantive testimony on core issues. Dao Health argued that Momcozy's refusal to produce many noticed witnesses, coupled with the limited PMK identification, left Dao Health without a practical way to identify witnesses with knowledge of key topics such as design, development, marketing, distribution, sales, costs, and revenue for the accused products.

2. Momcozy explained that the company has two main functional groups related to its breast pump franchise: technical R&D and commercial/marketing. Any person beyond the four PMKs that Momcozy has already identified would be duplicative or have incomplete information. Momcozy offered to supplement the response for the Paruu and PiBur products on non-technical topics.

3. Dao Health countered that witnesses at prior depositions admitted they marketed Momcozy products, but not Paruu or PiBur products. The Special Master stated that she was "not sure the point" of bringing the same witnesses back for deposition and suggested that a new Rule 30(b)(6) deposition miht be more effective and efficient.

4. Special Master Grossman **ordered as follows:**

    a. Dao Health shall serve a new Rule 30(b)(6) deposition notice by July 31, 2026, which shall include the topics that were not adequately responded to in prior depositions.

    b. Momcozy shall have until August 14, 2026 to serve responses, including an identification of the witness to sit for the Rule 30(b)(6) deposition for a particular topic, and objections.

    c. The parties shall meet and confer promptly. If they cannot reach agreement after one session, they shall promptly bring the issue back to the Special Master.

**D. Brief Section II.C: Interrogatory 16 Concerning Conception, Design, and Development of the Accused Products**

1. Dao Health argued that Momcozy's response provided only an incomplete table of project dates, with no narrative about conception and design of the accused products, no identification of who originated the ideas beyond "Chen Wanyuan and team," and no information about the Paruu and PiBur branded breast pump products. Dao Health argued that if Momcozy intends to rely on an original-innovation story at trial, it must disclose the non-privileged facts showing

when each accused product was conceived, who originated the idea, who participated in development, what roles those people played, and how development unfolded. Dao Health further noted that Chen Wanyuan testified that Momcozy participated in designing all the breast pumps it sells and that design and development documents would exist for each product unless lost or destroyed, which Dao Health argued was inconsistent with treating Paruu and PiBur products as outside the scope of the interrogatory.

2. Momcozy offered to supplement where a conception narrative exists for each accused product and to provide Rule 33(d) citations to relevant documents, but explained that certain accused products were situated differently. Momcozy stated that some products, including the S9 and S12 breast pumps, were developed by Shenzhen TPH Technology Co., Ltd, that the M1 breast pump was developed by Qingyuan Wancheng Electronic Technology Co., Ltd., and that Momcozy's involvement with the design or development of the Paruu and PiBur products was limited or nonexistent.

3. Dao Health responded that if Momcozy contends it did not conceive or participate at all in the design or development of a particular product, the response should say so expressly, identify the entity that did so if known, and be verified after a reasonable inquiry. Otherwise, Momcozy should provide the requested information for each device. Dao Health argued that a verified narrative is necessary because its evidence and Momcozy witnesses' testimonies call the existing response into question.

4. Special Master Grossman **ordered** that Momcozy shall supplement its response to ROG 16 by July 31, 2026, providing the conception, design, and development narrative where one exists for each of the 19 accused products. The supplemental response shall identify the conception date or date range, who first conceived the idea, who participated in design or development,

each person's role, the development stages, and the documents supporting the narrative. For any accused product for which Momcozy contends, after a reasonable investigation, that it did not conceive of or participate in the design or development and therefore cannot provide the requested information, the supplemental response shall so expressly state, identify the entity that conceived, designed, or developed the product if known, and include the factual basis for Momcozy's position after reasonable inquiry.

**E. Brief Section II.D: Dao Health's Motion to Compel Document Production Relating to Brand Strategy, Competitors, and Platform Manipulation (RFPs 102–107)**

1. Dao Health argued that RFPs 102–107 seek documents bearing on brand and portfolio strategy, review or ranking manipulation, platform-rule evasion, and related account-health issues. Dao Health argued those documents are relevant to willfulness, copying, damages, commercial success, and credibility because Momcozy has presented an innovation and original-design narrative while Dao Health's evidence suggests that sales may have been affected by brand segmentation, marketplace practices, promotions, or similar tactics. Dao Health emphasized that it was not seeking a broad unfair-competition inquiry, but product-specific discovery concerning the Momcozy, Paruu, and PiBur breast pumps and the marketplace accounts or brand strategies used to sell or promote them.

2. Momcozy objected that these RFPs sound in anticompetitive/unfair competition conduct, are not relevant to the patent claims and defenses at issue in this case, and noted that the caselaw cited by Dao Health—*WBIP v. Kohler* and *City of Chicago v. Shalaby*—was never briefed.

3. Special Master Grossman stated that she was willing to order a narrower production on these topics but did not want a "frolic and detour" for peripheral material. Special Master Grossman **ordered** Dao Health to serve narrowed RFPs on these topics by July 31, 2026, and Momcozy to respond and/or object by August 14, 2026, stating whether the narrowed scope is acceptable.

If the parties cannot reach agreement, the issue should be promptly submitted to the Special Master for decision.

**F. Brief Section II.E: Dao Health's Motion to Compel Incomplete Document Productions Relating to Technical Documents, Corporate Structure and Intercompany Agreements, Marketing Documents, Bundled Products and Replacement Parts, and Market Share, Sales/Pricing Forecasts, and Competitive Analyses**

1. Dao Health argued that Momcozy's production of documents across several agreed categories was deficient, including technical documents, corporate-structure and intercompany-agreement documents, marketing and commercial materials, bundled-product and replacement-part pricing materials, and market-share, sales/pricing-forecast, and competitive-analysis documents.

2. The parties specifically discussed technical documents in detail. Dao Health argued that the technical production was deficient for several reasons. For example, for the Paruu and PiBur products, the production is little more than public-facing user manuals released after product completion and does not show design history, alternatives considered, copying, technical representativeness, whether Momcozy directed or modified ODM work, or Momcozy's actual involvement in designing these devices. As a further example, Dao Health argued that Momcozy's own Exhibit I is a roadmap to missing documents, including complete data sheets, parts lists, CAD files, drawings, product reports, specifications, and other design and development records for each accused device. Dao Health noted that Momcozy's corporate representative testified that Momcozy participates in designing all breast pumps it sells and that design and development documents for each breast pump model would exist unless lost or destroyed, and argued that the gaps therefore require either further production or a verified, device-by-device and category-by-category explanation. Dao Health also argued that the same search-adequacy problem affected marketing, corporate-structure, intercompany-agreement,

bundling, replacement-part, forecast, market-share, and competitive-analysis documents, where the existing production did not reflect the ordinary-course records a company of Momcozy's scale would be expected to maintain.

3. Momcozy described a three-pronged parallel search for documents in the litigation: (1) custodian laptop imaging with search terms broader than those used for email; (2) targeted folder collection of central repositories, shared drives, and shared folders across both the R&D and commercial departments; and (3) targeted requests to knowledgeable individuals. Momcozy argued that the production of seemingly irrelevant component drawings shows that no relevance filter was applied, and that gaps reflect genuine differences in the design of certain accused products. For example, Mr. Chen stated that Shenzhen TPH Technologies was responsible for designing the S9 and S12 breast pumps, while Qingyuan Wancheng Electronic Technology Co., Ltd.designed the M1 breast pump.

4. Special Master Grossman stated that while she had reservations regarding "discovery on discovery," she was not prepared to give Momcozy the benefit of the doubt that prior counsel's document collection was adequate. She called it "bizarre" that only a user manual exists for some products and stated that relying on prior counsel's representations "isn't going to work for me." The Special Master directed Fish & Richardson to independently "assure itself" that everything was in fact collected and produced, and stated that this applied to all categories of documents Dao Health seeks, including technical documents, corporate-structure and intercompany-agreement documents, marketing documents, bundled-product and replacement-part documents, and market-share, sales/pricing-forecast, and competitive-analysis documents. Momcozy raised a privilege concern about the level of detail surrounding

its document collection efforts, but the Special Master ruled that custodians and sources are not privileged and must be identified, and that disclosure is without waiver of any privilege.

5. The Special Master **ordered as follows**:

   a. Counsel for Momcozy shall provide, by August 14, 2026, an attorney declaration attesting to the reasonableness and completeness of the searches conducted for the Section II.E document categories, including:

      i. the custodians, entities, and affiliates whose files or records were collected and searched;

      ii. the repositories, shared drives, servers, folders, devices, accounts, and other custodial or non-custodial data sources collected and searched;

      iii. the collection criteria and search or selection methods used;

      iv. who performed the collection and search—such as prior counsel, e-discovery vendors, or Momcozy employees—and whether each repository was completely collected or whether search terms or other narrowing criteria were applied;

      v. whether any responsive documents were withheld, excluded, lost, destroyed, inaccessible, not collected, or remain to be produced;

      vi. for any category of documents for which Momcozy contends no additional responsive documents exist, the factual basis for that position and a confirmation that after reasonable inquiry no additional responsive, non-privileged documents are reasonably available to Momcozy.

   b. After receiving and reviewing the attorney declaration, Dao Health may provide a specific list of documents, document categories, custodians, repositories, or gaps it wants Momcozy's counsel to track down. Momcozy's counsel shall either identify where the

documents were already produced by Bates number, produce any additional responsive, non-privileged documents, or provide a written explanation stating why no such documents exist or are available after reasonable inquiry. Dao Health may raise the issue again with the Special Master as to any specific documents or categories that remain unresolved.

**G. Schedule for Circulation of Minutes**

Special Master Grossman directed Dao Health to send the first draft of the minutes to Momcozy by July 22, 2026; Momcozy to return any comments or redline edits by July 27, 2026; and the parties to submit the minutes to the Special Master by July 30, 2026, with comments or redlines as necessary for the Special Master's final review.

Respectfully submitted,

By: *<u>/s/ Meng Xi</u>*
Meng Xi
mxi@susmangodfrey.com
Shawn Blackburn
sblackburn@susmangodfrey.com
SUSMAN GODFREY LLP
1000 Louisiana Street
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Tanner Laiche
Washington State Bar No. 60450
tlaiche@susmangodfrey.com
SUSMAN GODFREY LLP
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 505-3816
Facsimile: (206) 516-3883

Howard B. Rockman
Illinois ARDC #2361051
ROCKMAN, VIDEBECK & O'CONNOR
1s376 Summit Avenue, Court C
Oakbrook Terrace, IL 60181

By: *<u>/s/ Kelly A. Del Dotto</u>*
Jory M. Hoffman
Illinois Bar No. 6313054
jmhoffman@fr.com
**FISH & RICHARDSON P.C.**
150 N. Riverside Plaza, Suite 2820
Chicago, IL 60606
(312) 278-2700 (Telephone)
(312) 873-4603 (Facsimile)

Carl E. Bruce
Texas Bar No. 24036278
bruce@fr.com
Matthew A. Colvin
Texas Bar No. 24087331
colvin@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

David Barkan
California Bar No. 160825
barkan@fr.com

Ph. 630-627-4552
Email: rockman@rvoiplaw.com

Yanling Jiang
Illinois ARDC #6309336
JiangIP
33 West Jackson Blvd.
Chicago, IL 60604
Ph. 630-733-9483
Email: yanling@jiangip.com

*Attorneys for Plaintiff Dao Health*

Xiangjiu Wu
California Bar No. 363503
xwu@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street, Suite 400
Redwood City, CA 94063
(650) 839-5070 (Telephone)
(650) 839-5071 (Facsimile)

Kelly Del Dotto
Delaware Bar No. 5969
allenspach.del.dotto@fr.com
Vidhu B. Joshi
Delaware Bar No. 7608
joshi@fr.com
**FISH & RICHARDSON P.C.**
222 Delaware Avenue, Suite 1700
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)

Philip K. Chen
Massachusetts Bar No. 703289
pchen@fr.com
**FISH & RICHARDSON P.C**.
One Marina Park Drive, Suite 1700
Boston, MA 02210
(617) 542-5070 (Telephone)
(617) 542-8906 (Facsimile)

Yun Dong
California Bar No. 346210
dong@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130
(858) 678-5070 (Telephone)
(858) 678-5099 (Facsimile)

Timothy C. Bickham
Washington, D.C. Bar No. 456414
timothy@bickhampartners.com
**BICKHAM PARTNERS LLC**
818 18th Street, NW
Suite 810 - 1041
Washington, D.C. 20006

(202) 468-9175 (Telephone)

*Attorneys for Defendant*
*Shenzhen Lutejiacheng Technology Co., Ltd.*

**SO ORDERED, THIS 19TH DAY OF AUGUST, 2026**

Maura R. Grossman
Digitally signed by Maura R. Grossman
DN: cn=Maura R. Grossman, o=University of Waterloo, ou=David R. Cheriton School of Computer Science, email=maura.grossman@uwaterloo.ca, c=CA
Date: 2026.08.19 18:00:25 -04'00'

Special Master Maura R. Grossman